UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60483-CIV-ZLOCH

CONTOUR SPA AT THE HARD ROCK, INC.,

       Plaintiff,

vs.                                        **O R D E R**

SEMINOLE TRIBE OF FLORIDA,
a federally recognized Indian tribe,
MITCHELL CYPRESS, individually, and
JOHN DOE and RICHARD ROE,
individually,

       Defendants.

_____/

      THIS MATTER is before the Court upon the Motion Of Defendant, Seminole Tribe Of Florida, To Dismiss As To Amended Complaint (DE 28), and upon the Motion Of Defendant, Mitchell Cypress, To Dismiss As To Amended Complaint (DE 31).  The Court has carefully reviewed said Motions, the entire court file and is otherwise fully advised in the premises.

      This cause of action arises out of a contractual dispute between the Seminole Tribe of Florida and the Contour Spa At The Hard Rock, Inc., a spa facility located inside the Hard Rock Hotel and Casino Hollywood.  After leasing its premises to the Spa for over six years, the Tribe declared the lease void and locked out the Spa Owner and employees.  Plaintiff then brought suit in state court, and Defendant Seminole Tribe of Florida removed to federal court.

I.  Background

      Defendant Seminole Tribe of Florida (hereinafter "Defendant Seminole Tribe") is a federally recognized Indian tribe that owns and operates the Hard Rock Hotel and Casino Hollywood (hereinafter "the Hard Rock") located in Hollywood, Florida.  DE 16, ¶¶ 4 & 32.

Defendant Mitchell Cypress is the Chairman of the Seminole Tribe of Florida. Id. at ¶ 5. Plaintiff Contour Spa at the Hard Rock, Inc. (hereinafter "Plaintiff" or "Contour Spa") is a Florida corporation that owned and operated a spa facility located inside the Hard Rock via a long term lease agreement (hereinafter "lease") with Defendant Seminole Tribe from July 18, 2003, until March 17, 2010. See DE 16, ¶¶ 32-76 and DE 31, p. 1.

Signed in November 2003, this lease called for an initial term of ten years followed by four renewal terms of five years each. DE 28, p. 2. By this lease, Defendant Seminole Tribe agreed to waive its sovereign immunity as to certain lawsuits that Plaintiff might bring. See DE 16-3, s. 22.29. However, the lease's validity was expressly conditioned upon the United States Secretary of the Interior approving the lease.[1] The contract assigned the Chairman of the Seminole Tribal Council, Mitchell Cypress, the duty of submitting an application for lease approval to the Interior Secretary. This much he did. But that application was never approved.

Nevertheless, in the lead-up to the Spa's construction and opening, Plaintiff alleges that Defendant Seminole Tribe made knowingly false oral and written assertions to Plaintiff that it had obtained secretarial approval. Plaintiff cites a letter from Defendant Seminole Tribe's Authorized Representative, Joseph Weinberg, dated November 26, 2003, in which Weinberg refers to the lease as "fully executed." See DE 16, ¶ 45. Further, Fanit Panofsky, the President and Owner of Plaintiff Spa, alleges in her affidavit that Weinberg told her at a meeting in March or April of 2004—prior to the Spa's opening—that the Tribe had obtained

_____

[1] Section 22.30 of the Lease provides: "Approval. The above is all conditioned upon approval of this Lease by the Secretary of the Interior, or her authorized representative ("the Secretary").

secretarial approval and that Plaintiff must open for business by May 17, 2004.  See DE 16, ¶ 47.  As Panofsky recalls it, Weinberg even added his kudos: "Girl, you are good to go.  Mazeltov. Congratulations."  Id.  Thereafter, Plaintiff spent more than $1.5 million designing and building its Spa.  DE 16, ¶ 72.  Plaintiff opened its Spa on May 17, 2004, and soon began generating large revenues.  DE 16, ¶ 50.

Apparently, disputes arose beginning in 2005 regarding whether Hard Rock hotel guests could use the Spa free of charge.  DE 16, ¶ 59.  Plaintiff also alleges that Defendant Seminole Tribe offered to purchase the Spa, and was angered when Plaintiff rejected the offer. DE 16, ¶¶ 73-74.  In any event, the watershed moment came at a meeting between the Parties on June 29, 2007, when Defendant disclosed to Plaintiff for the first time that it had never obtained secretarial approval of the lease.  Plaintiff then wrote to the Interior Secretary to verify this claim.  DE 16, ¶ 63.  In October 2007, the Secretary confirmed that although Defendant Seminole Tribe had submitted an application, the Secretary had sent a reply letter to Defendant dated May 27, 2004 (ten days after the Spa opened), noting several deficiencies in Defendant's application and requesting that Defendant correct said deficiencies and re-submit its application.  Id.  Defendant Seminole Tribe never shared this letter with Plaintiff at any time.  Id.  Plaintiff then spent the ensuing two years repeatedly cajoling Defendant Seminole Tribe to re-submit its application, but to no avail.  DE 16, ¶ 66.

On March 17, 2010, at approximately 10:00 p.m., Defendant Seminole Tribe's Counsel e-mailed a letter to Plaintiff informing it that Defendant had elected to permanently close Plaintiff's business since no valid lease existed.  DE 16, ¶ 75.  On March 18, 2010,

Plaintiff's employees arrived for work at the Spa, only to find that Defendant Seminole Tribe had locked them out of their business and was using its security personnel to deny them any access to the premises, including the phones and computers.  DE 16, ¶ 76. Plaintiff immediately filed suit in the Circuit Court of the Seventeenth Judicial Circuit of Florida seeking declaratory and injunctive relief.  DE 16, ¶ 83.  Defendant Seminole Tribe then removed to this Court on March 30, 2010, and Plaintiff amended its complaint naming Mitchell Cypress, John Doe, and Richard Roe as additional Defendants.  See DE 16.

Plaintiff's Amended Complaint (DE 16) alleges two federal Counts and five state law Counts.  Count I seeks declaratory, injunctive, and other relief against all Defendants under the Indian Civil Rights Act, 25 U.S.C. § 1301, et seq.  Count II seeks declaratory, injunctive and other relief against all Defendants pursuant to the Indian Long Term Leasing Act, 25 U.S.C. § 415, and its accompanying regulations, 25 C.F.R. Parts 2 and 162.  Counts III through and including VII seek damages against certain Defendants for various state law causes of action including Wrongful Eviction, Unlawful Entry, Fraud, Promissory Estoppel, and Unjust Enrichment.

By the instant Motions (DE 28 & DE 31), Defendants urge the Court to dismiss the above-styled cause for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  First, Defendant Seminole Tribe of Florida argues that it is immune from this lawsuit by virtue of its sovereign status as a federally recognized Indian tribe, and that it never validly waived its sovereign immunity in the instant lease because the lease was never approved by the Interior Secretary. Further, Defendants assert that the Secretary's approval was a

4

condition precedent to the lease's validity and therefore, by its very terms, the lease was and is void ab initio.

In its Memorandum Of Law In Opposition To Motion Of Defendant, Seminole Tribe Of Florida, To Dismiss Amended Complaint (DE 32), Plaintiff concedes that the instant lease agreement was never approved by the Interior Secretary and that this approval was a condition precedent to the lease's validity. But Plaintiff argues, inter alia, that Defendant Seminole Tribe should be estopped from asserting its sovereign immunity because it represented to Plaintiff more than once that it had obtained the requisite Secretarial approval and that the lease was valid. See DE 32, p. 1.

Because the Court finds that Defendant Seminole Tribe never validly waived its sovereign immunity, the Court will grant Defendant Seminole Tribe's Motion To Dismiss (DE 28) for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). For the same reason, the Court will also grant Defendant Mitchell Cypress's Motion To Dismiss (DE 31) for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or in the alternative, under Fed. R. Civ. P. 12(b)(6). The Court will also remand the remaining state law claims to state court for reasons more fully explained below.

## II. Defendant Seminole Tribe's Motion To Dismiss

### A. Sovereign Immunity

It is well settled that Indian tribes enjoy common-law immunity from suit in state and federal court by virtue of their status as a sovereign. Kiowa Tribe v. Manufacturing Technologies, Inc., 523 U.S. 751, 754 (1998) (citing United States v. U.S. Fidelity & Guaranty Co., 309 U.S. 506, 512 (1940)); Sanderlin v. Seminole Tribe Of Florida, 243 F. 3d 1282, 1285 (11th Cir. 2001). "Sovereign immunity is jurisdictional in nature." F.D.I.C. v. Meyer, 510 U.S. 471, 475

(1994).  Under federal law, "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."  <u>Kiowa Tribe</u>, 523 U.S. at 754.  Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 58 (1978) (<u>quoting</u> <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976)).

It should be noted that tribal immunity is not perfectly analogous to either federal or state sovereign immunity.  "[B]ecause of the peculiar 'quasi-sovereign' status of the Indian tribes, the Tribe's immunity is not congruent with that which the Federal Government, or the States, enjoy."  <u>Three Affiliated Tribes of the</u> <u>Fort Berthold Reservation v. Wold Eng'g</u>, 476 U.S. 877, 890 (1986). In fact, this immunity is broader than that of the United States in at least one respect: tribal governments retain sovereign immunity even when they operate commercial enterprises, both on and off reservations.[2]

When Indian tribes do enter the commercial realm, federal law requires that the United States Government approve certain contracts between Indian tribes and non-Indians.  First, 25 U.S.C. § 81 provides that

> No agreement or contract with an Indian tribe
> that encumbers Indian lands for a period of 7 or
> more years shall be valid unless that agreement
> or contract bears the approval of the Secretary
> of Interior or a designee of the Secretary.

25 U.S.C. § 81(b).  It is undisputed that 25 U.S.C. § 81 is applicable to the instant lease.

Secretarial approval is thus a condition precedent to the

---

[2] This immunity extends to "entities that are arms of the tribes" but apparently not to "tribally chartered corporations that are completely independent of the tribe."  <u>Cohen's Handbook of</u> <u>Federal Indian Law 7.05[1][a]</u>.

validity of such a lease.  Accordingly, a lease of restricted Indian lands that lacks secretarial approval is null and void <u>ab</u> <u>initio</u>. <u>See e.g.,</u> <u>A.K. Management Co. v. San Manuel Band of Mission Indians</u>, 789 F. 2d 785, 788 (9th Cir. 1986); <u>Barona Group of Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc.</u>, 840 F. 2d 1394, 1403-1404 (9th Cir. 1987) (holding that whether a contract requires approval under section 81 is a question of law, absent ambiguity in the contract); <u>Sangre de Cristo Development Company, Inc. v. United States</u>, 932 F. 2d 891, 895 (10th Cir. 1991).

Second, the Indian Long Term Leasing Act, 25 U.S.C. § 415 and its accompanying regulations, 25 C.F.R. § 162, provide in relevant part that restricted Indian lands may only be leased with the approval of the United States Government.  <u>See</u> 25 C.F.R. § 162.610(a) (stating that both an Indian tribe's approval and the Secretary of the Interior's approval is needed for encumbrance of a Lease of restricted tribal land).  In the instant case, it is undisputed that the Parties explicitly incorporated these regulations into the instant lease.  <u>See</u> DE 16-3, s. 22.33.

Plaintiff concedes that its lease with Defendant Tribe was never approved by the Secretary and acknowledges that this approval was a necessary prerequisite to the lease's validity, and by extension, to a valid waiver of the Tribe's sovereign immunity.  However, Plaintiff offers several theories under which it argues the Court should still find that Defendant Seminole Tribe waived its immunity.  The Court will address each of these theories in turn.

B.  Plaintiff's Arguments Against Sovereign Immunity

1. Equitable Estoppel

First and most crucially, Plaintiff argues that Defendants should be estopped from asserting the lease's lack of secretarial

approval because Defendant Seminole Tribe made oral and written assertions to Plaintiff that it had obtained secretarial approval prior to the Spa's opening.  Even assuming Defendant Seminole Tribe made these assertions, it is unlikely that equitable contract principles apply to agreements that are subject to 25 U.S.C. § 81. The Ninth and Tenth Circuit Courts of Appeals have both so held.

In A.K. Management Company v. San Manuel Band Of Mission Indians, 789 F. 2d at 786, a non-Indian Corporation entered into a contract with an Indian tribe to operate bingo on the Tribe's reservation.  Later, disagreements arose between the parties and the Tribe refused to seek the Bureau of Indian Affairs' (BIA)[3] approval of their agreement.  The Corporation then filed suit.  The district court ruled that the bingo agreement was null and void under Section 81 and therefore dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  On appeal, appellant Corporation argued that the Tribe's refusal to seek secretarial approval violated an implied covenant of good faith and fair dealing.  However, the Ninth Circuit held that since the agreement was void, general contract principles did not apply and therefore the Tribe was not obligated to seek BIA approval. Id. at 789.

On similar facts, the Tenth Circuit relied in part on A.K. Management in rejecting a non-Indian corporation's estoppel claim, even where the corporation alleged "particularly egregious conduct" by the Tribe.  See U.S. ex rel. Citizen Band Potawatomi Indian Tribe Of Oklahoma v. Enterprise Management Consultants, Inc., 883 F. 2d 886, 890 (10th Cir. 1989).  Thus, both the Ninth and Tenth Circuits have rejected equitable arguments as inapplicable to such contracts.

---

[3] The BIA is a part of the Department of the Interior and has the authority, through the Secretary, to approve leases involving certain Indian lands.

Even Plaintiff acknowledges that "courts have generally rejected estoppel arguments in regard to BIA approval." DE 32, p. 14.   For this reason, the Court also rejects Plaintiff's laches claim.

Nevertheless, Plaintiff pins its last best hope on Wisconsin Winnebago Business Committee v. Koberstein, 762 F. 2d 613 (7th Cir. 1985), as demonstrating that equitable contract principles may in fact apply to agreements subject to Section 81.   However, in Wisconsin Winnebago, the Seventh Circuit never reached the applicability issue because it found that appellant Corporation had not made out a prima facie case of estoppel.   Id. at 620.

Even if equitable contract principles do apply to such contracts, Plaintiff has not pleaded a prima facie case of estoppel here.   In order to state a claim for estoppel, the party claiming estoppel must show (1) another person made a definite misrepresentation of fact to the party, (2) the party reasonably relied on that representation, and (3) the party reasonably relied on the misrepresentation in changing his position for the worse. Heckler v. Community Health Services Of Crawford County, Inc., 467 U.S. 51, 59 (1984) (citing Restatement (Second) of Torts 894(1) (1979)).   In the case sub judice, assuming the facts in the light most favorable to Plaintiff, Plaintiff has established that (1) Defendant Seminole Tribe misrepresented that it had obtained secretarial approval, (2) Defendant Seminole Tribe expected Plaintiff to rely upon this misrepresentation, and (3) Plaintiff relied upon this misrepresentation to spend over $1.5 million to construct its Spa.   However, the Court's inquiry does not end here.

Importantly, when a party relies on another party's misrepresentation, "that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known

9

that its adversary's conduct was misleading." <u>Heckler</u>, 467 U.S. at 59 (emphasis added).  Such reliance is not reasonable if the person induced to act had access to the truth:

> If, at the time he acted, such party had knowledge of the truth, <u>or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means</u>, he cannot claim to have been misled by relying upon the representation or concealment.

<u>Id.</u> (emphasis added).

Plaintiff did not reasonably rely on Defendant's misrepresentation because it could have discovered that the lease had not been approved by contacting the Secretary of the Interior, or even by asking Defendant for some proof of the Secretary's approval.  Indeed, when Plaintiff finally did write the Interior Secretary in 2007, it soon received a return letter confirming Plaintiff's dreaded state of affairs.  In short, Plaintiff did not exercise <u>reasonable diligence</u> to discover the truth, and thus negligently remained ignorant of it. <u>See</u> <u>id.</u>  Therefore, the Court finds that even if equitable contract principles apply to the instant case, Plaintiff has failed to show that its reliance on Defendant's misrepresentations was reasonable, and thus failed to set forth a <u>prima</u> <u>facie</u> case of estoppel.


2. Waiver of Sovereign Immunity by Removal

Next, Plaintiff argues that Defendant Seminole Tribe waived its sovereign immunity by voluntarily removing the above-styled cause to federal court.  The Eleventh Circuit has not addressed this rather novel argument.  And Plaintiff concedes that the law is far from settled in this area.  DE 32, p. 10.  In fact, Plaintiff can point to only one case adopting its reasoning.  In <u>State of New York v. The Shinnecock Indian Nation</u>, 523 F. Supp. 2d 185 (E.D.N.Y. 2007), the district court found that the Shinnecock Tribe waived its sovereign

immunity by removing a state court action to federal court.  The court reached this result by extending the Supreme Court's decision in <u>Lapides v. Board of Regents of the University System of Geogia, et al.</u>, 535 U.S. 613 (2002), to Indian tribes.  In <u>Lapides</u>, the Court held that Georgia's removal of a state law cause of action to federal court constituted waiver of its Eleventh Amendment immunity.

However, the Court finds that <u>Shinnecock</u> likely overstretched <u>Lapides</u> by applying it to Indian tribes.  Perhaps that is why <u>Shinnecock</u> is apparently the only federal court to have vitiated tribal immunity on the basis of removal.  And indeed, as Plaintiff acknowledges, at least one other district court has reached the opposite conclusion.  <u>See</u> <u>Ingrassia v. Chicken Ranch Bingo and Casino</u>, 676 F. Supp. 2d 953, 961 (E.D. Cal. 2009).  The <u>Ingrassia</u> Court noted that "the case law is not absolutely clear whether tribal sovereign immunity is more like immunity enjoyed by the states or by foreign sovereigns in the circumstance of removal." <u>Id.</u> And it also observed that several district courts have applied tribal immunity after removal without even addressing the issue. <u>Id.</u> These factors led the <u>Ingrassia</u> Court to conclude that removal to federal court does not waive tribal immunity. <u>Id.</u> Likewise, these reasons lead the Court to decline to follow the reasoning of <u>Shinnecock</u> and instead follow <u>Ingrassia</u> in holding that Defendant Seminole Tribe's removal to federal court did not waive its tribal immunity.

3. Subject Matter Jurisdiction Intertwined With Merits

Next, Plaintiff also urges that dismissal of its complaint would be premature because it contends the issue of subject matter jurisdiction is "inextricably intertwined" with the merits of its suit.  <u>See e.g.,</u> <u>Lawrence v. Dunbar</u>, 919 F.2d 1525 (11th Cir. 1990); <u>Eaton v. Dorcester Development, Inc.,</u> 692 F. 2d 727 (11th Cir. 1982). This argument fails, however, because the Court's lack of subject

matter jurisdiction is evident from the face of Plaintiff's Complaint (DE 16).  As discussed above, the instant lease was null and void <u>ab initio</u> as a matter of law, and Plaintiff's estoppel claim is unavailing.  Therefore, the Court finds this argument is without merit.  Having addressed Plaintiff's objections to Defendant Seminole Tribe's sovereign immunity, the Court turns to Plaintiff's alleged causes of action.

### C. Count I - Indian Civil Rights Act

In Count I, Plaintiff argues that even if Defendant Seminole Tribe's waiver of sovereign immunity was ineffective, this does not bar Plaintiff's claim for violation of the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1301, <u>et seq.</u>  The ICRA was enacted in 1968 to "insure that the American Indian is afforded the broad constitutional rights secured to other Americans" and to "protect individual Indians from arbitrary and unjust actions of tribal governments." <u>Santa Clara</u>, 436 U.S. at 72-73 (White, J., dissenting) (<u>quoting</u> S. Rep. No. 841, 90th Cong., 1st Sess., 6 (1967)).  Plaintiff has alleged violations of Sections 1302(a)(5) and 1302(a)(8) which respectively provide: "No Indian tribe in exercising powers of self-government shall...(5) take any private property for a public use without just compensation;...(8) deny to any person within its jurisdiction the equal protection of its law or deprive any person of liberty or property without due process of law."  The ICRA does not provide for an express cause of action to enforce its provisions.

Even so, Plaintiff urges the Court to allow it to bring an implied cause of action under the ICRA pursuant to the Tenth Circuit's holding in <u>Dry Creek Lodge v. Arapahoe and Shoshone Tribes</u>, 623 F. 2d 682 (10th Cir. 1980).  In <u>Dry Creek</u>, the plaintiffs were non-Indians who owned a tract of land on the Reservation of the Shoshone and Arapahoe Indians in Wyoming.  <u>Id.</u> at 683-684.  After

12

obtaining a construction license from the Tribes, plaintiffs built a guest lodge for their hunting clientele.  Id. at 684.  But the day after they opened their lodge for business, the Tribes barricaded the access road that led from plaintiffs' lodge to the main highway because that road crossed the land of a tribal family who objected to plaintiffs' use of it.  Id.  The plaintiffs sought relief from the Tribes' Business Council which purported to act as an executive, legislative, and judicial body.  But the Tribes denied plaintiffs any opportunity to present their claim.  Instead, the Tribes advised both the plaintiffs, and the objecting Indian family, to resolve their differences by exercising "self-help."  Thereafter, the plaintiffs sued in federal court alleging, among other things, that the defendant Tribes had violated their due process and equal protection rights under the ICRA.

While this litigation was ongoing, the United States Supreme Court decided the case of Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978).  At issue in Santa Clara was a tribal ordinance preventing children born to mixed marriages (one Santa Claran, one non-Santa Claran) from joining the Tribe and enjoying associated rights such as the right to vote in tribal elections and the right to hold tribal office.  Id. at 52-53.  Julia Martinez, a Santa Claran who had married a non-Santa Claran, and her daughter brought a class-action suit alleging the ordinance violated the equal protection guarantee of the ICRA.  Id. at 53-54.  Following a full trial, the district court found that although 28 U.S.C. § 1343(4) provided a jurisdictional basis for plaintiffs' of action under Title I of the ICRA, plaintiffs were unable to prove an equal protection violation on the merits.  Id.  The Tenth Circuit agreed that § 1343 provided a cause of action, but reversed on the merits because it held that the ordinance did violate the equal protection provision of ICRA.  Id. at 54-55.

13

The Supreme Court reversed.  Writing for the majority, Justice Marshall held that the ICRA does not expressly or impliedly authorize a cause of action for declaratory or injunctive relief against Indian tribes or tribal officers.  Id. at 72.  While acknowledging that the Court frequently infers a federal cause of action to enforce civil rights, Justice Marshall placed great emphasis on protecting tribal sovereignty in cases of intra-tribal disputes.  Id. at 59-60. Justice White penned a vociferous dissent arguing that the majority opinion ignored precedent which generally allowed implied causes of actions for civil rights violations under the U.S. Constitution.  Id. at 73-83.

Santa Clara was binding law by the time the Dry Creek plaintiffs' appeal reached the Tenth Circuit for the second time. Nevertheless, the Tenth Circuit declined to apply it.  The Tenth Circuit distinguished Santa Clara as relying heavily on two factors: (1) the tribal court relief available to the Santa Clara plaintiffs; and (2) the "intratribal nature of the problem sought to be resolved."  Dry Creek, 623 F. 2d at 685.  By contrast, the Tenth Circuit held that the Dry Creek plaintiffs had "no remedy within the tribal machinery," nor did they have any remedy in state or federal court.  Finding that there had to be a forum where the dispute could be settled, the Tenth Circuit reversed the district court's order dismissing the plaintiffs' complaint, and remanded for a new trial on the issue of damages.  Id.  Thus, the Tenth Circuit created an exception to Santa Clara whereby ICRA does impliedly authorize a cause of action against an Indian tribe under certain circumstances. Those circumstances are: (1) involvement of a non-Indian in the action; (2) the alleged deprivation of an individual's real property interests; (3) an attempt by the plaintiff to seek a remedy within the tribal system; and (4) the absence of an adequate tribal remedy. Id.

Plaintiff Contour Spa argues that it meets these criteria and thus urges the Court to apply the Dry Creek exception to the instant case.  The Court agrees that Plaintiff meets the first two criteria.  But the Court finds that Plaintiff does not meet the third criterion because Plaintiff never sought a remedy within the Seminole Tribal Council following Defendant's termination of the lease.

As to the fourth criterion, Plaintiff argues that Defendant Seminole Tribe has never established a judicial system, despite the fact that its own Constitution and bylaws provide for one.  DE 32, p. 3-4; DE 28, Ex. A.  Plaintiff also asserts that Defendant's Tribal Council, which purports to exercise both legislative and adjudicatory functions, is not a competent adjudicatory forum.  DE 32, p. 4; DE 28, p. 4.  In response, Defendant Seminole Tribe argues that the Supreme Court has recognized the competency of similar tribal forums.  See e.g., White v. Pueblo of San Juan, 728 F. 2d 1307, 1312-1313 (10th Cir. 1984).

The Eleventh Circuit has stated in dicta that the lack of an adequate tribal forum does not necessarily waive tribal immunity and confer jurisdiction on federal courts.  See State of Florida v. Seminole Tribe v. Florida, 181 F. 3d 1237, 1243-44 (11th Cir. 1999) ("...[I]t is far from clear that 'tribal [sovereign] immunity [must give way to] federal jurisdiction when no other forum is available for the resolution of claims.").  The Eleventh Circuit also considered it relevant that the plaintiff there could bring an action in state court.  Id.  By extension, even if the Seminole Tribal Council is not an adequate forum, this alone is not controlling.  In addition, Plaintiff asserts that it has a remedy under Florida statutes.

Therefore, after balancing the Dry Creek criteria, the Court declines to apply the Dry Creek exception.  The Court reaches this finding in part because the Tenth Circuit has subsequently narrowed

the Dry Creek exception.  See Ramey Construction Company, Inc. v. Apache Tribe Of The Mescalero Reservation, 673 F. 2d 315, 319 (10th Cir. 1982) (distinguishing Dry Creek as involving "particularly egregious allegations of personal restraint and deprivation of personal rights"); White v. Pueblo of San Juan, 728 F. 2d 1307 (10th Cir. 1984); Walton v. Tesuque Pueblo, 443 F. 3d 1274, 1278-79 (10th Cir. 2006); Ordinance 59 Assc'n v. U.S. Dept. of Interior Secretary, 163 F. 3d 1150, 1158-59 (10th Cir. 1998); Olguin v. Lucero, 87 F. 3d 401, 404 (10th Cir. 1996); Nero v. Cherokee Nation of Oklahoma, 892 F. 2d 1457, 1460 (10th Cir. 1989).  As the Tenth Circuit stated in White v. Pueblo of San Juan, respect for the supremacy of the Supreme Court's decision in Santa Clara obligates lower federal courts to narrowly interpret the Dry Creek exception.  728 F. 2d at 1313.

However, the Court pauses to emphasize that its finding in this case is not intended to further narrow the Dry Creek exception, nor is it intended to extend the reach of the Santa Clara decision. Without expressing any opinion on the merits of the instant case, the Court notes that a majority of the Supreme Court has suggested "[t]here are reasons to doubt the wisdom of perpetuating tribal sovereign immunity...at least as an overarching rule."  Kiowa Tribe v. Manufacturing Technologies, Inc., 523 U.S. 751, 758 (1998).  As the Court put it:

> In our interdependent and mobile society, however, tribal immunity extends beyond what is needed to safeguard tribal self-governance. This is evident when the Tribes take part in the Nation's commerce.  Tribal enterprises now include ski resorts, gambling, and sales of cigarettes to non-Indians.

Id.  The Kiowa Court ultimately declined to confine tribal immunity to on-reservation activity or non-commercial activity, in large part because it "defer[red] to the role Congress may wish to exercise in this important judgment."  Id.  So, too, this Court defers to

16

Congress, but echoes the Supreme Court's clarion call for a more reasoned and thoughtful approach to tribal immunity in the field of commercial activity.  Perhaps the commercial business partners of Indian tribes should not have to rely solely on the noblesse oblige of tribal forums for legal redress.

D.  Count II - Indian Long Term Leasing Act

In Count II, Plaintiff asserts a cause of action under the Indian Long Term Leasing Act, 25 U.S.C. § 415 and its accompanying regulations, 25 C.F.R. § 162, alleging that Defendant Seminole Tribe exercised unlawful self-help in locking Plaintiff out of its Spa, instead of deferring to the BIA to interpret the lease and take appropriate corrective action.

However, this claim must be dismissed because Congress has not authorized a cause of action for would-be plaintiffs to enforce the terms of § 415 or its regulations.  Plaintiff appears to argue that it does have a cause of action under this Act, citing to Yavapai-Prescott Indian Tribe v. Watt, 707 F. 2d 1072 (9th Cir. 1983).  However, Yavapai is not applicable here for at least two reasons. First, the subject lease at issue in Yavapai had been approved by the Interior Secretary.  Id. at 1073.  Second, although provisions of the Indian Long Term Leasing Act were at issue in Yavapai, they did not provide the basis for the Yavapai-Prescott Tribe's cause of action. Instead, the Tribe brought its cause of action pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701, et seq., which allows lawsuits in federal district courts for review of federal agency action.  By contrast, this case does not involve a decision by a federal agency.  Thus, Yavapai is not on point and Plaintiff lacks any authority allowing it a cause of action to enforce the Indian Long Term Leasing Act or its regulations.

Having addressed Plaintiff's arguments, the Court finds that the

17

lease agreement is null and void _ab initio_ for lack of secretarial approval, and therefore Defendant Seminole Tribe retains its sovereign immunity from suit. Accordingly, the Court will grant Defendant Seminole Tribe's Motion To Dismiss (DE 28) under Fed. R. Civ. P. 12(b)(1) because the Court lacks subject matter jurisdiction.

### III. Defendant Mitchell Cypress's Motion To Dismiss

The Court now turns to the Motion Of Defendant, Mitchell Cypress, To Dismiss As To Amended Complaint (DE 31). Counts I and II of Plaintiff's Amended Complaint (DE 16) seek declaratory, injunctive and other relief against the Chairman of the Seminole Tribe of Florida, Defendant Mitchell Cypress, for allegedly participating in Defendant Seminole Tribe's action to oust Plaintiff from its Spa. Plaintiff asserts the same bases for federal jurisdiction it asserts against Defendant Seminole Tribe: ICRA, the Indian Long Term Leasing Act, and its regulations.

By the instant Motion (DE 31), Defendant Mitchell Cypress asserts that he is immune from suit because he is an officer of a federally recognized Indian tribe and therefore Plaintiff's complaint against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Immunity Of Tribal Officers

"Tribal officers are protected by tribal sovereign immunity when they act in their official capacity and within the scope of their authority" Tamiami Partners, LTD. v. Miccosukee Tribe Of Indians Of Florida, 177 F. 3d 1212, 1225 (11th Cir. 1999) (internal citations omitted); Tenneco Oil Co. v. Sac & Fox Tribe Of Indians, 725 F. 2d 572, 576 (10th Cir. 1984); Ex Parte Young, 209 U.S. 123 (1908). Tribal officers enjoy a qualified rather than an absolute immunity.

Tenneco Oil, 725 F. 2d at 576.  Suits to enjoin tribal officers acting in their official capacities are barred when the relief sought reveals that the suit is one against the sovereign.  Tamiami, 177 F. 3d at 1225-1226 (affirming dismissal of suit against Tribal officers where complaint revealed that plaintiff was seeking Tribe's specific performance under the contract).  However, under the doctrine of Ex Parte Young, an exception lies where the plaintiff is seeking declaratory or injunctive relief and the tribal officer has acted outside the scope of the lawful authority the sovereign was capable of bestowing on him.  See Ex Parte Young, supra; Santa Clara, supra at 59; Tamiami, supra at 1225; Tenneco, supra at 576.

Plaintiff contends that the Ex Parte Young exception applies to Defendant Mitchell Cypress because he allegedly participated in locking Plaintiff out of its Spa.  This action was outside his scope of authority, Plaintiff argues, because the federal regulations incorporated into the instant lease, 25 C.F.R. § 162, require the BIA—not Indian tribes or tribal officers—to interpret contracts between Indian tribes and non-Indians, and to take appropriate corrective action.  See 25 C.F.R. 162.613 - 162.619.  In other words, Plaintiff alleges that unilateral "self-help" is prohibited by the regulations.

When a defendant mounts a substantive challenge to a federal court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court will not assume the facts contained in a plaintiff's complaint to be true.  See Makro Capital of America, Inc. v. UBS AG, 543 F. 3d 1254, 1258 (11th Cir. 2008).  Defendant Mitchell Cypress's Motion To Dismiss (DE 31) is just that—a substantive challenge. Thus, the Court need not presume that Defendant Cypress participated

19

in Defendant Seminole Tribe's action to evict Plaintiff from its Spa.

However, even presuming that Defendant Cypress did so participate (an allegation he denies), he can not be said to have acted outside the scope of his lawful authority. By Plaintiff's own admission, secretarial approval was never obtained. As a matter of law, then, the lease agreement at issue was null and void from the start. See e.g., Sangre de Cristo Development Company, Inc. v. United States, 932 F. 2d 891, 895 (10th Cir. 1991); Wells Fargo Bank, N.A. v. Lake of  Torches Economic Development Co., 2010 WL 1687877 (W.D. Wis. April 23, 2010). Therefore, the lease provisions adopting the federal regulations that Plaintiff claims prohibit self-help were null and void from the start as well.

Nevertheless, Plaintiff argues that in order to trigger the Ex Parte Young exception, it need only allege that Defendant Cypress acted beyond the authority that Defendant Seminole Tribe was capable of bestowing on him under federal law. In support, Plaintiff cites to Tamiami Partners, LTD. v. Miccosukee Tribe Of Indians Of Florida, 63 F. 3d 1030 (11th Cir. 1995). This argument ignores the fact that Tamiami involved a valid contract approved by the Interior Secretary. See Tamiami, 63 F. 3d at 1037-1038. By this contract, the parties agreed to operate under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721. Thus, it was plausible for the Tamiami plaintiff to argue that the individual defendants had exceeded the scope of their lawful authority under IGRA and, therefore, were not shielded by sovereign immunity. In the instant case, by contrast, the Parties never had a valid contract and thus were never operating under binding federal law. Accordingly, Defendant Cypress was not legally required to abide by the federal regulations at 25 C.F.R. §

20

162, and thus could not have been constrained by them when he allegedly helped re-take the Spa premises.

As such, the Court finds that the <u>Ex Parte Young</u> exception does not apply and the Court will grant Defendant Cypress' Motion To Dismiss under Fed. R. Civ. P. 12(b)(1) since he is protected by sovereign immunity from the declaratory and injunctive relief sought in Counts I and II of the Amended Complaint (DE 16).


B. Implied Cause Of Action Against Tribal Officers

In the alternative, the Court finds that even assuming <u>arquendo</u> that Defendant Cypress is not entitled to sovereign immunity, he is still entitled to dismissal of Counts I and II pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff is not authorized to bring a cause of action under either Count.  Plaintiff's ICRA claim in Count I is barred by <u>Santa Clara</u>, wherein the Supreme Court held that under the ICRA, Congress did not authorize either an express or implied cause of action for declaratory or injunctive relief against Indian tribes or tribal officers.  436 U.S. at 72.  Furthermore, the <u>Dry Creek</u> exception does not apply to Defendant Cypress for the same reasons it does not apply to Defendant Seminole Tribe.  <u>See</u> <u>discussion</u> <u>infra</u> Part II.C.

Similarly, Plaintiff's Indian Long Term Leasing Act claim in Count II must be dismissed because Congress has not authorized a cause of action for would-be plaintiffs to enforce the terms of this Act or its regulations.  <u>See</u> <u>discussion</u> <u>infra</u> Part II.D.

Finally, it is well-settled that the Declaratory Judgment Act does not, in and of itself, provide a basis for subject matter jurisdiction.  <u>See</u> <u>Jolly v. United States</u>, 488 F. 2d 35 (5th Cir.

1974).[4]

Therefore, the Court finds in the alternative that Counts I and II of Plaintiff's Amended Complaint (DE 16) must be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

### V.   State Law Claims

Finally, Plaintiff alleges this Court may exercise jurisdiction over its state law claims pursuant to 28 U.S.C. § 1367.  Section 1367 provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  However, the Court finds herein that it does not have original jurisdiction over Plaintiff's federal claims in Counts I and II because it lacks subject matter jurisdiction over the same.  Accordingly, Counts I and II provide no basis for the Court to exercise supplemental jurisdiction over Plaintiff's state law claims. And Counts I and II were the only federal claims contained in Plaintiff's Complaint.  See DE 16.  Thus, the Court must remand the remaining state law claims set forth in the Complaint (DE 16).

Assuming arguendo that the Court did have original jurisdiction

---

[4] In Bonner v. City of Pritchard, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

over Count II as to Defendant Mitchell Cypress, the Court would dismiss it pursuant to Fed. R. Civ. P. 12(b)(6). In that event, the Court would decline to exercise supplemental jurisdiction over Plaintiff's state law claims having dismissed all federal claims over which it had original jurisdiction. Thus, the Court would remand the remaining state law claims as to Defendant Cypress pursuant to 28 U.S.C. § 1367(c)(3).

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion of Defendant, Seminole Tribe Of Florida, To Dismiss As To Amended Complaint (DE 28) be and the same is hereby **GRANTED** in part and **DENIED** in part as follows:

a. The Motion of Defendant, Seminole Tribe Of Florida, To Dismiss As To Amended Complaint (DE 28) be and the same is hereby **GRANTED** as to Counts I and II of Plaintiff's Amended Complaint (DE 16);

b. Counts I and II of Plaintiff's Amended Complaint (DE 16) be and the same are hereby **DISMISSED** with prejudice as to Defendant Seminole Tribe of Florida;

c. Counts III, IV, V, VI, and VII of Plaintiff's Amended Complaint (DE 16) as to Defendant Seminole Tribe of Florida be and the same are hereby **REMANDED** to state court;

2. The Motion Of Defendant, Mitchell Cypress, To Dismiss As To Amended Complaint (DE 31) be and the same is hereby **GRANTED** in part and **DENIED** in part as follows:

a. The Motion of Defendant, Mitchell Cypress, To Dismiss

As To Amended Complaint (DE 31) be and the same is hereby **GRANTED** as to Counts I and II of Plaintiff's Amended Complaint (DE 16);

      b. Counts I and II of Plaintiff's Amended Complaint (DE 16) be and the same are hereby **DISMISSED** with prejudice as to Defendant Mitchell Cypress;

      c. Counts III, IV, V, VI, and VII of Plaintiff's Amended Complaint (DE 16) be and the same are hereby **REMANDED** to state court as to Defendant Mitchell Cypress;

3. The Clerk of the United States District Court, Southern District of Florida, be and the same is hereby **DIRECTED** to forward a certified copy of this Order to the Clerk of the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, Case No. 10-013009-02; and

4. To the extent not otherwise disposed of herein, all pending Motions are hereby **DENIED** as moot.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___31st___ day of March, 2011.

                                     WILLIAM J. ZLOCH
                                     United States District Judge

Copies furnished:

All Counsel Of Record

Clerk, Seventeenth Judicial Circuit Court
Broward County, Florida
Case No. 10-013009-02
(certified copy)